IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MELANIE ROCKWOOD | ) | CV-03-1519-CO |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

COONEY, Magistrate Judge:

### **INTRODUCTION**

Plaintiff, Melanie Rockwood (Rockwood), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. The

court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision should be affirmed and this case should be dismissed.

## INTRODUCTION

Rockwood was 37 years old at the time of the ALJ's decision. Tr. 38, 186. She has a GED, and past work as a babysitter, bakery packager, and office helper. Tr. 246, 263. Rockwood alleges disability beginning in November 1997, based on back, neck, and head injuries, battered women's syndrom, post traumatic stress disorder, stress, and depression. Tr. 240. Rockwood previously filed an application for SSI on March 3, 1998. Tr. 185-88. She did not appeal the previous denial of benefits. Tr. 168-171.

## STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), *cert denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible of more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation Process

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive.

In step one, the Commissioner will find the claimant not disabled if the claimant is engaged in substantial gainful activity. Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). In step two, the Commissioner will find the claimant not disabled if the Commissioner determines that the claimant has no "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920©)). In step three, the Commissioner will presume conclusively that the claimant is disabled if the Commissioner determines that the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). The criteria for these listed impairments are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. § 416.945(a); Social Security Ruling (SSR) 96-8p.

In step four, the Commissioner will find the claimant not disabled if the Commissioner determines that the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 416.920(e).

If the adjudication reaches step five, then the Commissioner must determine whether the claimant can perform other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. Yuckert, 482 U.S. at 141-42; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 416.966.

## II.     The ALJ's Decision

The ALJ did not make a step one determination whether Rockwood had engaged in substantial gainful activity since her alleged disability onset date. Tr. 37. At step two the ALJ found Rockwood had the following severe impairments: cervical strain and possible back strain. Tr. 35, 37. At step three the ALJ found Rockwood's impairments did not meet or equal the requirements of a listed impairment. Tr. 37.

The ALJ assessed Rockwood with the RFC to perform medium work with moderate limitations in twisting and bending, and the need to occasionally change positions. Tr. 38.

The ALJ found, at step four, that Rockwood could perform her past work as a babysitter or office helper. Id. He therefore found Rockwood was not disabled, within the meaning of the Act. Id. In the alternative, the ALJ determined that Rockwood could perform other work existing in significant numbers in the national economy, such as babysitter and office helper. Id.

**DISCUSSION**

Rockwood contends the ALJ erred: (1) by improperly discrediting her testimony; (2) by improperly rejecting some of the medical evidence; (3) by erroneously finding Rockwood's past work qualified as "past relevant work" at step four; and finally, (4) by failing to elicit an explanation for a conflict in the vocational expert's testimony at step five.

**I.      The ALJ properly found Rockwood to be less than fully credible.**

Rockwood testified that she has neck pain, back pain, hip pain, and pain in her right thigh. Tr. 99. She said she gets sharp pains in her head; shocks in her hands; sometimes has trouble lifting her arms high; sometimes feels pain between her shoulder blades; sometimes her "legs will go numb"; sometimes she has trouble walking; and sometimes she has trouble lifting things, like a gallon of milk. Id.

Rockwood also said she has trouble concentrating "due to overloads of mental and emotional stress." Id. She explained that she recently had a custody battle for two of her children to her ex-husband. Tr. 105-06. Rockwood said her ex-husband physically and sexually abused her, and memories of abuse cause her to have flashbacks and bad dreams. Tr. 106, 116-17.

Rockwood testified that she worked as a childcare provider for two children from April to November 2000, in exchange for room and board. Tr. 92-95. In addition to supervising the children, Rockwood spent an hour a day cooking, doing dishes, folding cloths, and performing

5 - FINDINGS AND RECOMMENDATION

light cleaning. Tr. 111. When she quit this job she moved into a camper trailer in her mother's back yard, which she acquired by working a few hours a week cutting vegetables at a friend's restaurant. Tr. 97, 110.

Rockwood testified that she avoids vacuuming, sweeping, and mopping. She said she doesn't like to go shopping because it hurts to stand on hard surfaces "for any length of time." Tr. 100. She said she hasn't pushed a grocery cart in awhile, and she avoids carrying things. Id.

According to Rockwood, she only takes Ibuprofen and Darvocet for her pain because she doesn't have insurance, and can't get coverage under the Oregon Health Plan because she's incapable of meeting their expectation that she spend 20 hours a week looking for work. Tr. 114.

In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for truthfulness, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. See Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

The ALJ found that Rockwood's complaints were not fully credible, "in light of the consistently negative findings on multiple neurologic examinations, the low degree of medical treatment required for pain management, and the claimant's own reports of a reasonably full range of activities. Tr. 36. Further, the ALJ noted that Rockwood had never shown a propensity to

work, and had willfully terminated past employment for reasons including "dissatisfaction." Tr. 36, 386.

According to Rockwood, the ALJ should have considered that she was a full-time mother for many years while she was raising her three children, and therefore did not work outside the home. I find no evidence to indicate one way or the other whether the ALJ considered this. However, reviewing Rockwood's earning statement, and her own testimony regarding her various short-lived jobs, I find substantial evidence to discount Rockwood's credibility in part due to her poor work history. Tr. 36, 193; See Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002)(finding a claimant's poor work history may be considered an adverse credibility factor).

Rockwood contends that the ALJ also failed to take her lack of insurance and financial difficulties into account when he concluded that the record reflects a low degree of medical treatment. Tr. 36. Rockwood suggests the ALJ should have considered her lack of ability to pay for medical treatment as a good reason for not obtaining it, as the regulations require the ALJ to do when a claimant has failed to follow prescribed treatment. See 20 C.F.R. § 416.930(c). However, Rockwood's contention is not supported by the record, which reflects relatively consistent and extensive care from various physicians over the years, sometimes resulting in prescriptions for heavy pain medication which Rockwood evidently did not follow, and physical therapy that was discontinued due to lack of significant progress, not financial reasons. Tr. 510.

Rockwood also alleges the ALJ wrongly determined that her daily activities were inconsistent with the degree of disability she alleged. From Rockwood's questionnaires and testimony the ALJ concluded that while Rockwood may experience some pain and soreness from activity, she is still able to accomplish a full range of activities of daily living, even reportedly

7 - FINDINGS AND RECOMMENDATION

mopping on her hands and knees. Tr. 272. A disability claimant will not be penalized for attempting to maintain a sense of normalcy in her life. However, when a claimant's level of activity is inconsistent with her claimed limitations, her activities will have a bearing on her credibility. See Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998). Rockwood's history of part-time work might indicate that she is unable to sustain a productive level of activity for an eight hour workday. However, considered in conjunction with her activities of daily living, her activity level was found to be inconsistent with her claimed limitations. I find the ALJ reasonably determined that Rockwood's activities were inconsistent with her allegation of debilitating back pain.

Finally, Rockwood claims error in the ALJ's statement that Rockwood's report of decreased sensation to pinprick and light touch in a "stocking-glove distribution" was inconsistent with human anatomy. Tr. 36. After reviewing the relevant medical note, I agree with Rockwood that Dr. Michael Karasek's statement that Rockwood showed an "exaggeration response" to a spine examination was ambiguous. Tr. 554. The ALJ should have re-contacted Dr. Karasek for clarification. However, I find the ALJ's failure to do so amounted to harmless error because the ALJ otherwise supported his credibility conclusions with substantial evidence.

**II.   The ALJ properly assessed the medical evidence.**

The ALJ is responsible for resolving conflicts and ambiguities in medical evidence. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 1999). The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician when it is not contradicted by another doctor. See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th

Cir. 1999). If a treating physician's opinion is contradicted by another doctor, the Commissioner may reject it by providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. at 600-601.

Rockwood contends the ALJ wrongly rejected several physician's opinions that she suffered from chronic low back pain, and an adjustment disorder with paranoid personality features. We shall consider each of Rockwood's contentions against the ALJ's findings.

First, Rockwood alleges the ALJ rejected the opinion of Dr. Raymond Nolan that she suffers from chronic low back and neck pain syndromes. Tr. 471. The ALJ found Dr. Nolan's chart notes from January 20, 1999, indicated that Rockwood was generally capable of performing all the physical tests he used to evaluate. Tr. 471. The ALJ did not interpret the listing of "Chronic low back pain syndrome" and "Chronic neck syndrome with intermittent pain" in the "Impression" section of Dr. Nolan's note as an opinion one way or the other about Rockwood's condition. Tr. 33, 471. I find the ALJ's conclusion reasonable.

Second, Rockwood claims the ALJ wrongly rejected the opinion of Dr. Robert Hacker that she had chronic pain. Tr. 564. In fact, Dr. Hacker's letter from April 25, 2000, reads as follows:

> Mrs. Rockwood's main finding in my opinion in one of chronic pain. Pain is a very difficult disorder to categorize in my experience, particularly when there are no associated neurologic deficits. At the present time, I do not feel that I have an operative approach which would improve Mrs. Rockwood's chronic pain problem, and since she does not evidence myelopathy or radiculopathy (surgical indications for the treatment of ruptured discs), no operative approach has been recommended.

Id. Dr. Hacker goes on to conclude, "I cannot state that Mrs. Rockwood is disabled." Id.

9 - FINDINGS AND RECOMMENDATION

The ALJ did not interpret Dr. Hacker's letter as an endorsement of Rockwood's claimed pain, but found to the contrary that "Dr. Hacker's letter clearly establishes that the claimant's complaints of pain are without corresponding neurologic deficit." Tr. 34. This conclusion is plainly reasonable, particularly in light Dr. Hacker's chart notes indicating that Rockwood was able to walk one mile before experiencing pain, and only completed one month of physical therapy with minimal progress. Id.

Third, Rockwood points to a February 25, 2000, letter by Dr. James Sinnott, wherein he opines that Rockwood has been disabled since September 1999, and would continue to be unable to work for at least 12 months. Tr. 561. The ALJ rejected this opinion in part because Dr. Sinnot was not qualified to make a disability determination, and in part because his functional limitations assessment was not based on objective evidence. See SSR 96-5p (holding that the disability determination is reserved to the Commissioner). Dr. Sinnot admitted he had not reviewed Rockwood's records, but simply concluded that her symptoms were consistent with disc herniation and ruptured discs. Tr. 562. If he had, he would have found that Rockwood only had a "mild" protrusion of her disc. Tr. 508. Thus, I find the ALJ properly rejected this opinion.

The ALJ also considered Rockwood's mental impairments. Tr. 33. He determined that even in combination with her physical ailments, her adjustment disorder only resulted in a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. Id.

According to Rockwood, the ALJ should have explored a psychological basis for her pain, given that two therapists assessed an adjustment disorder, and Rockwood has a history of

10 - FINDINGS AND RECOMMENDATION

domestic violence and sexual abuse. I find this contention without merit. The ALJ is not under a duty to credit a claimant's subjective limitations simply because she has had a difficult life. Rockwood's family problems were carefully considered by Dr. Gail Wahl, and Mr. Harold Bailey. Tr. 466-68, 494-96. As the ALJ noted, on January 28, 1999, Dr. Wahl found Rockwood was in a great deal of emotional distress over the custody battle she was having with her ex-husband, and issues of past abuse. Tr. 466. Yet, Dr. Wahl assessed Rockwood with a Global Assessment of Functioning (GAF) score of 75, indicating transient and expectable reactions to psychosocial stressors, and no more than slight impairment in social, occupational, or school functioning. See DSM-IV-TR, at 34.

Mr. Bailey, who examined Rockwood about a week later, on February 5, 1999, also noted Rockwood's family stressors, quoting her statement, "This last month has really been hard. I'm looking to get a referral for counseling." Tr. 494. Mr. Bailey also observed that Rockwood was well-groomed, well-oriented, had good eye contact, normal thought content and reasoning, and an intact memory. Tr. 495. Thus, the ALL found Mr. Baily's assessment of a GAF of 45, indicating serious symptoms, was inconsistent with the findings in his report, and with the record as a whole, suggesting Rockwood was experiencing a temporary, elevated period of stress at the time these psychological evaluations were performed. Tr. 33. Rockwood has not convinced me that this was an unreasonable basis upon which to reject Mr. Bailey's assessment, particularly given that he is not a physician, but a psychologist with a Master's degree, and his findings are contradicted by a medical doctor. Tr. 496; See Morgan, 169 F.3d at 600.

In sum, I find the ALL reasonably assessed Rockwood's medical record, and based his findings on substantial evidence.

**III.     The ALJ's step four finding was not supported by substantial evidence.**

To be found disabled, a social security claimant has the burden of establishing that she can no longer perform her past relevant work.  See 20 C.F.R. § 404.1520(e); Barnhart v. Thomas, 540 U.S. 20 (2003); Mathews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  Here, the ALJ determined that Rockwood failed to meet this burden.  Tr. 38.  The ALJ found that Rockwood retained the RFC to perform her past relevant work (PRW) as a babysitter, and office worker, and was therefore not disabled.  Tr. 36.

At step four of the sequential evaluation, the ALJ may find the claimant to be "not disabled" if he determines she can still do her past relevant work.  The ALJ will look at the jobs a claimant has done within the past 15 years, which the claimant worked at long enough to learn to perform (30 days for unskilled jobs), and that constituted substantial gainful activity (SGA).  See 20 C.F.R. 416.965(a).  The ALJ will not consider whether a claimant's former employer continues to make PRW available to him.  See Barnhart v. Thomas, 540 U.S. 20 (2003).

In this case, the ALJ failed to make a finding at step one of the sequential evaluation as to whether Rockwood had engaged in SGA since her alleged onset of disability, as defined by the regulations at 20 C.F.R. § 416.974(b)(2)&(3).  Rather, the ALJ seems to have given Rockwood the benefit of the doubt on this issue, and assumed she had not engaged in SGA since her alleged onset date.  However, Rockwood contends that the ALJ's failure to identify whether her past work ever rose to the level of SGA caused his step four finding to be in error.

For the purposes of a step four finding, the regulations only permit the ALJ to consider past work the claimant has performed in the last 15 years, at a substantial gainful activity level. So if a claimant never earned enough from her past jobs to meet the SGA threshold, those jobs

cannot form the basis of a step four finding. In this case, Rockwood points to her earnings statement, and her own testimony, to support her contention that she has never earned at the SGA level. Tr. 193, 213, 263. Indeed, her earning statement supports this claim. Tr. 193. From 1980 through 1989, Rockwood did not meet the $300 monthly earnings threshold, and from 1990 through June of 1999, her earnings did not meet the $500 monthly earnings threshold. Tr. 193; See 20 C.F.R. § 416.974(b)(2)(B). Further, Rockwood testified, and her employer corroborated, that from April to November 2000, she had in-kind earnings valued at $386.68 per month as a childcare provider. Tr. 92-95. This amount also falls markedly below the $700 monthly earnings threshold for the year 2000 onward.

Accordingly, I find the ALJ erred at step four by finding Rockwood could still perform her past relevant work, because she did not have any qualifying work upon which to base this determination.

### IV. The ALJ's step five decision was supported by substantial evidence.

The ALJ's step four finding would have ended the evaluation, and a remand would be in order, had he not made an alternative step five finding. He relied on vocational expert (VE) testimony to find Rockwood "not disabled" at step five, either.

Rockwood alleges the VE deviated from the Dictionary of Occupational Titles (DOT), when he testified that the jobs of babysitter and office worker were entry level, but had a Specific Vocational Preparation (SVP) of three, corresponding with semi-skilled work. The problem with this testimony, says Rockwood, is that the ALJ found Rockwood did not have any transferable skills. See 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(b); see also SSR 00-4p. Evidently the DOT classifies these jobs as "semi-skilled" precisely because they take more than 30

13 - FINDINGS AND RECOMMENDATION

days to learn.  See 20 C.F.R. § 416.968.  Yet the VE seemed to overlook this fact when he referred to these jobs as "entry level" and determined a hypothetical claimant with no transferrable skills would qualify.  Thus, argues Rockwood, the VE's deviation from the DOT, whether intentional or not, required an explanation before it could be relied upon, and the ALJ's failure to elicit one was error.  SSR 00-4p (requiring the ALJ to elicit a "reasonable explanation for the conflict before relying on the VE").

The Commissioner does not disagree with Rockwood's contention, but points out that only the job of babysitter is listed as semi-skilled in the DOT.  The officer worker/helper job is unskilled, and therefore not in conflict with the VE's testimony.  The VE testified that there are 492,000 office worker/ helper jobs nationwide, which the Commissioner contends is a "significant number" of jobs, and therefore satisfies the ALJ's burden.  Tr. 144.

Neither the Commissioner, nor the Ninth Circuit, has clearly defined the minimum number of jobs necessary to constitute a "significant number."  However, the case law certainly supports a finding that 492,000 jobs nationwide meets this criteria.  See Baker v. Secretary of Health and Human Services, 882 F.2d 1474 (9th Cir. 1989), citing Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986) (upholding as a "significant number" 3750 to 4250 jobs in the local economy); see also Moncada v. Chater, 60 F.3d 521 (9th Cir. 1995) (upholding as a "significant number" 64,000 jobs nationwide).

Thus, finding the ALJ supported his hypothetical question with substantial evidence, I would affirm the ALJ's step five determination that Rockwood remains capable of performing other jobs that exist in significant numbers in the national economy.

**RECOMMENDATION**

Based on the foregoing, the Commissioner's final decision should be AFFIRMED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 26 th day of January, 2005.

_____/s/_____
John P. Cooney
United States Magistrate Judge